# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JENNIFER LYNN FREISMUTH,

      **Plaintiff,**

      **v.**                **Case No. 25-C-1016**

**FRANK J. BISIGNANO,**
**Commissioner of Social Security,**

      **Defendant.**

---

## DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION

---

This is an action for judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Jennifer Lynn Freismuth's application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff asserts that the decision of the administrative law judge (ALJ) is flawed and requires remand. For the reasons that follow, the court now concludes, almost 25 years after Plaintiff claimed she became disabled, that the Commissioner's decision denying her claim should be affirmed.

## BACKGROUND

This case has a long and circuitous history. Plaintiff filed the application now before the court for a period of disability and disability insurance benefits (DIB) on November 22, 2004, alleging disability beginning October 19, 2001, when she was 41 years old, and continuing through March 31, 2007, her last date insured. This was in fact Plaintiff's second application for DIB. Plaintiff had applied for DIB and SSI some twelve years earlier in November of 1992, shortly after she was injured in the accident described below. After those claims were denied, she obtained a job and worked until 2001, at which time she was laid off from her job. R. 180. In any event, in her November 2004 application, Plaintiff listed head injury, hearing loss, short-term memory, and

depression as the conditions limiting her ability to work. R. 744. After her application was denied initially and on reconsideration, an ALJ held a hearing and, on November 3, 2008, the ALJ issued an unfavorable decision. R. 106–23. The Appeals Council remanded the case to the ALJ on December 16, 2009. R. 125–26. The ALJ issued an unfavorable decision on September 13, 2010, and the Appeals Council denied review of the decision on December 6, 2011, making the ALJ's decision the final decision of the Commissioner. R. 127–42. Plaintiff then filed a complaint in the United States District Court for the Eastern District of Wisconsin, seeking judicial review of the ALJ's decision. The Commissioner's decision was reversed and remanded for further proceedings in a decision sharply critical of the Agency. R. 165–85; *see also Freismuth v. Astrue*, 920 F. Supp. 2d 943 (E.D. Wis. 2013).

An ALJ held an administrative hearing on remand and issued another unfavorable decision on March 7, 2014. R. 189–213. On May 15, 2015, the Appeals Council remanded the decision for failure to comply with the district court's order. R. 214–20. An ALJ issued another unfavorable decision on September 14, 2016. R. 221–56. The Appeals Council again remanded the case to an ALJ on August 29, 2019, because the majority of the claim file had been destroyed in 2017. R. 257–61. Without access to the complete claim file, the Appeals Council was unable to review the ALJ's decision. After the Appeals Council's remand, the Hearing Office staff made considerable efforts to reconstruct the claim file.

ALJ Dean Syrjanen held a hearing on October 27, 2021, to discuss reconstruction of the claim file, including obtaining transcripts from prior hearings. R. 95–103. Plaintiff's representative assisted with the construction of the claim file. The ALJ held an administrative hearing on January 19, 2022. R. 58–94. Plaintiff, who was represented by counsel, and a vocational expert (VE) testified. At the hearing, Plaintiff's counsel agreed that all relevant documents had been included in the record and stated that there was no reason to hold the record

2

open.  R. 63–64.  The ALJ noted that the period of disability at issue was October 19, 2001, the alleged onset date, to March 31, 2007, the date last insured.  R. 62.

In 1992, Plaintiff was in a motorcycle accident and sustained a traumatic brain injury, resulting in hearing loss.  R. 67, 597–98, 1709–12.  Plaintiff worked as an administrative assistant for several years, until she was permanently laid off from her job in October 2001.  R. 660, 1001.  After being laid off, Plaintiff found another job, but she reported she was laid off three weeks later because the company found that she was not able to learn the work requirements quickly enough.  R. 1002.  Plaintiff indicated that she suffered from problems with memory, concentration, and following written instructions; fibromyalgia; narcolepsy; seizures; hearing loss; vertigo; and balance.  She stated that her symptoms began after the 1992 accident.  She also indicated that a car accident in 2000 or 2001 contributed to her symptoms.  *See* R. 233.

During the January 2022 hearing, Plaintiff testified that she returned to work full-time in December 2017 as housekeeper for Agnesian Healthcare.  R. 69.  In this role, Plaintiff set up her cart with cleaning products and deep cleaned 19 hospital rooms throughout the workday.  Plaintiff originally worked 40 hours a week but, beginning in 2021, she worked part-time after undergoing a knee replacement.  R. 69–70.  She stated that she currently works 0.7 time, or four days a week.  R. 70.  Plaintiff explained that she was able to return to work because her sleep and mood improved after being placed on antidepressant medication and she got a cochlear implant in 2014.  Before she got the implant, she was totally deaf in her right ear.  R. 75–76.  Plaintiff reported that her boss allows her to take breaks when she needs them and that she typically takes three to four breaks a day.  R. 80, 82.

Plaintiff testified that her issues with memory and concentration have not changed and that she has to write a lot of notes.  She stated that it takes her longer to do the job because it is hard to process things.  R. 76.  Plaintiff reported that she rarely experiences vertigo but her balancing

3

problems are "still very extreme." R. 77. Although Plaintiff did not use an assistive device, she indicated that she cannot use stairs and always uses the elevator. R. 77–78. Plaintiff also stated that she has headaches. R. 83.

In a 28-page decision dated April 14, 2022, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act during the five-and-a-half-year period from October 19, 2001, through March 31, 2007, the date last insured. R. 19–46. Following the Agency's sequential evaluation process, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date through the date last insured. R. 23. Next, the ALJ determined that Plaintiff had the following severe impairments: status post traumatic brain injury in 1992 with residual seizure disorder, vertigo, and cognitive/memory impairment, disorder of the cervical spine, hearing impairment, hypersomnolence, and an affective disorder. R. 23. The ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

After reviewing the record, the ALJ determined that Plaintiff had the residual functional capacity (RFC) during the relevant period to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following limitations:

> she could never climb ladders, ropes, scaffolds, ramps, or stairs; never balance; occasionally stoop, kneel, crouch, or crawl; frequently handle and finger with her bilateral upper extremities; and had to avoid all exposure to unprotected heights, hazards, or the use of moving machinery. She was limited to jobs that do not require fine hearing capability and to jobs that do not require telephone communication. She was limited to simple, routine, repetitive tasks with no fast-paced work; only simple work-related decisions; and occasional workplace changes. She was limited to occasional interactions with coworkers, supervisors, and the public. She was able to maintain attention, concentration, persistence, and pace for the performance of simple, routine, repetitive tasks for two-hour periods throughout an eight-hour workday with typical breaks. She was able to sustain an ordinary routine without special supervision in a work environment involving simple, routine, repetitive tasks and consistent daily duties and expectations that do not change from day to day.

4

R. 27.  The ALJ concluded that, through the date last insured, Plaintiff was unable to perform any past relevant work.  R. 44.  But, from October 19, 2001, through the date last insured, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including final assembler, document preparer, and machine tender.  R. 45.  Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from October 19, 2001, through March 31, 2007, the date last insured.  R. 46.  The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making that decision the final decision of the Commissioner.  R. 1–8.

### LEGAL STANDARD

The Commissioner's final decision will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence."  *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009)).  Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023) (internal quotation marks and citation omitted).  Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn.  *Jelinek*, 662 F.3d at 811 (citing *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)).  The ALJ "must build an accurate and logical bridge from the evidence to his conclusion[s]."  *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citation omitted); *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998)).

The ALJ is also expected to follow the Social Security Administration's (SSA) rulings and regulations. Failure to do so, unless the error is harmless, requires reversal. *See Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)).

## ANALYSIS

### A. Subjective Symptoms

Plaintiff challenges the ALJ's evaluation of her subjective allegations. The social security regulations set forth a two-step procedure for evaluating a claimant's statements about the symptoms allegedly caused by her impairments. *See* 20 C.F.R. § 404.1529. First, the ALJ determines whether a medically determinable impairment "could reasonably be expected to produce the pain or other symptoms alleged." § 404.1529(a). If so, the ALJ then "evaluate[s] the intensity and persistence" of a claimant's symptoms and determines how they limit the claimant's "capacity for work." § 404.1529(c)(1). In doing so, the ALJ considers all the available evidence as well as the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of her pain or other symptoms; (3) the precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) other treatment; and (6) any other factors concerning functional limitations and restrictions due to pain or other symptoms. *See* § 404.1529(c)(3); *see also* SSR 16-3p. "ALJ credibility determinations are given deference because ALJs are in a special position

6

to hear, see, and assess witnesses." *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014) (citation omitted). On judicial review, the court must "merely examine whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213–14 (7th Cir. 2003)). The court is not to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "It is only when the ALJ's determination lacks any explanation or support that we will declare it to be patently wrong . . . and deserving of reversal." *Elder*, 529 F.3d at 413–14 (internal quotation marks and citations omitted); *see also Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not substantially consistent with the medical evidence and other evidence in the record. R. 28–29. Plaintiff asserts that the ALJ disregarded evidence that she was provided with work accommodations both before and after the relevant period at issue that permitted her to work. But the ALJ explained that "the record does not establish that [Plaintiff's] work was performed in an accommodated environment." R. 33. The ALJ noted that Plaintiff testified that her employer allowed her to flex her schedule for medical appointments and that Plaintiff did not report that she required accommodations due to a mental or physical inability to perform required tasks. *Id.* The ALJ's explanation was not unreasonable.

The ALJ also observed that Plaintiff's ability to continue engaging in substantial gainful activity between her traumatic brain injury and her alleged onset of disability is not dispositive of the issue of her disability. The ALJ acknowledged that a combination of impairments or a worsening of impairments could result in a claimant's initially being able to work following an injury but subsequently becoming disabled. He concluded, however, that the objective evidence

7

documents that Plaintiff's condition was generally stable during the years before and after her alleged onset of disability. *Id.*

Plaintiff argues that the ALJ erred by describing her condition as "stable." She contends that "stable" only means that she was no better or worse and does not mean that she was able to work or not impaired. Plaintiff also asserts that the ALJ ignored evidence that her conditions fluctuated in severity over time and findings that she did have sufficient improvement to return to work in 2017. In this case, the ALJ fully considered the evidence in the record in assessing Plaintiff's subjective symptoms. He thoroughly summarized and assessed Plaintiff's testimony, Plaintiff's activities of daily living and work activity, the objective medical evidence, Plaintiff's treatment history, and the opinion evidence. The fact that reasonable factfinders may reach different conclusions is not a reason to overturn the ALJ's assessment of Plaintiff's subjective symptoms. Plaintiff essentially asks the court to reweigh the evidence and overrule the ALJ's opinion. That is not the court's role, however. *See Lopez*, 336 F.3d at 539. The ALJ's conclusion is supported by substantial evidence, is not patently wrong, and does not necessitate remand.

**B. Assessment of Medical Opinions**

Plaintiff argues that the ALJ failed to properly assess the medical opinions of Dr. Elliot Phillips, Dr. Gina Everson, and Dr. Craig Wlodarek. Under the regulations in effect at the time of the ALJ's decision, the ALJ must give a treating source's medical opinion on the nature and severity of the claimant's impairments "controlling weight" if the opinion "is well-supported by the medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in . . . [the] record." 20 C.F.R. § 404.1527(c)(2); SSR 96-2p. If the ALJ gives the treating source's medical opinion lesser weight, he must articulate "good reasons" for doing so. § 404.1527(c)(2). In such a case, "the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's

8

specialty, the types of tests performed, and the consistency and supportability of the physician's opinion" in determining the weight to give the medical opinion. *Id.*; *see also Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The ALJ must also "consider the entire record, including all medical and nonmedical evidence," and adequately explain how he weighed the opinions in light of the record. *Murphy v. Astrue*, 454 F. App'x 514, 518 (7th Cir. 2012) (internal quotation marks and citations omitted).

### 1. Dr. Phillips and Dr. Everson

Dr. Phillips completed a multiple impairment questionnaire in September 2008. R. 1097–1104. He stated that his diagnosis for Plaintiff's condition included idiopathic hypersomnolence and possible narcolepsy and that Plaintiff's primary symptom was daytime sleepiness. R. 1097–98. Dr. Phillips opined that Plaintiff could sit for four hours per day and stand or walk for four hours per day. R. 1099. He further indicated that Plaintiff needed to get up and move around frequently, would require unscheduled breaks, would be incapable of even low-stress work, and would miss three days of work each month. R. 1102–03. In October 2008, Dr. Phillips completed a sleep disorders impairment questionnaire. R. 1105–09. Dr. Phillips stated Plaintiff needed to avoid work that involved climbing or working at heights; needed to avoid power machines, moving machinery, or other hazardous conditions; needed to avoid work that was not closely supervised where a spell could occur in isolation; and needed breaks at unpredictable intervals. R. 1107–08. He also indicated that Plaintiff had limitations with regard to understanding, remembering, and carrying out simple instructions; maintaining attention for two-hour segments; being punctual with customary and usually strict tolerances; performing at a consistent pace; dealing with normal work stresses; and traveling to unfamiliar places. R. 1108. Dr. Phillips again opined that Plaintiff was incapable of even low-stress work, needed unpredictable rest periods, and would miss work more than three times per month. R. 1108–09.

9

The ALJ gave Dr. Phillips' opinions little weight. R. 35. He observed that, while Dr. Phillips noted Plaintiff's primary symptom was daytime sleepiness, the record did not support that any daytime sleepiness Plaintiff experienced was intense or frequent enough to prevent her from performing simple, sedentary work. The ALJ explained that, prior to her date last insured, Plaintiff made occasional complaints of fatigue, but she also reported no more than occasional sleep problems. He noted that Plaintiff did not report any significant sleep difficulty to another treating physician, Dr. Thomas Altepeter, in January 2007, shortly before her date last insured. The ALJ indicated that Plaintiff underwent formal sleep testing in April 2008, more than one full year after her date last insured. He explained that the RFC's limitation to sedentary work and no work around hazards accounts for Plaintiff's subjective complaints of fatigue, and that neither the April 2008 sleep testing nor any other evidence indicates that prior to March 31, 2007, her fatigue or hypersomnolence would have prevented her from preforming work as outlined in the RFC. *Id.*

The ALJ also found that Dr. Phillips' treatment notes do not contain findings that are consistent with or support the extent of the limitations he found. He noted that Plaintiff returned to full-time work in 2017 in a position that far exceeded the limitations set forth by Dr. Phillips. The ALJ acknowledged that the work occurred many years after the date last insured, but Plaintiff did not testify to significant treatment for sleep issues or somnolence, nor did she allege significant changes or improvements with regard to this condition. The ALJ observed that Plaintiff testified to not missing work (absent acute medical issues). He also noted that, while Plaintiff required breaks in her current position, those breaks are attributable to pain and the physical demands of the job as opposed to sleepiness. *Id.*

Dr. Everson, Plaintiff's primary care doctor, provided numerous opinions, all after Plaintiff's date last insured. Starting in October 2008, Dr. Everson completed a multiple impairment questionnaire. R. 1110–18. She stated that Plaintiff could sit for no more than two

10

hours per day; could stand or walk for no more than four hours per day; needed to get up and move around every 30 minutes; would have postural limitations and could lift and carry up to five pounds frequently, ten pounds occasionally, and 20 pounds rarely. R. 1112–13. She also found that Plaintiff would have significant limitations with repetitive reaching, handling, fingering, and lifting but noted she was unsure about the degree of limitation in Plaintiff's ability to grasp, turn, or twist objects. R. 1113. She opined that Plaintiff had minimal limitations in reaching and no limitations in using her fingers and hands for fine manipulations. R. 1114. Dr. Everson concluded that Plaintiff could perform low-stress work but would miss more than three days of work per month due to her impairments and her need for treatment. R. 1115–16.

In April 2009, Dr. Everson wrote a letter to Plaintiff's counsel regarding the onset date of Plaintiff's disability. R. 1119–20. She stated that she was unable to clearly determine the onset date for Plaintiff's disability because Plaintiff was not under her care at the time of her alleged onset of disability in October 2001. She nevertheless indicated that Plaintiff's alleged onset date of October 2001 was reasonable and that it was her impression that, as of April 2009, Plaintiff's chronic cervical and low back pain, chronic headaches, idiopathic central hypersomnolence, significant hearing loss, depression, and traumatic brain injury all taken together impaired her ability to maintain employment. *Id.*

In August 2010, Dr. Everson summarized the treatment she provided Plaintiff as well as her previous opinions regarding Plaintiff's ability to perform work-related activities. R. 1212–14. She stated that the limitations included in her previous opinions had applied since at least October 5, 2005, when she first treated Plaintiff. *Id.*

In November 2013, Dr. Everson opined in an office clinic note that Plaintiff was "completely incapacitated from work of any kind." R. 1227. The next month, Dr. Everson completed a multiple impairment questionnaire. R. 1229–37. She stated that Plaintiff could sit

11

for only one hour per day; could stand or walk for only one hour per day; needed to get up and move around during the day; could lift and carry up to five pounds frequently and ten pounds occasionally; and had marked limitations in the use of her hand and arms. R. 1232–34. Dr. Everson found multiple postural and environmental limitations, including psychological limitations due to the traumatic brain injury, need to avoid heights, no pushing, no pulling, no kneeling, no bending, and no stooping. R. 1236. Dr. Everson opined that Plaintiff's conditions interfere with her ability to maintain employment and that Plaintiff is currently incapacitated by her symptoms. She noted that she did not expect improvements. *Id.*

In June 2014, Dr. Everson opined that Plaintiff is completely incapacitated from work. She explained that the combination of Plaintiff's traumatic brain injury, hearing loss, chronic cervical and low back pain due to degenerative disc disease, carpal tunnel syndrome, and idiopathic hypersomnolence caused her disability. R. 1801.

In October 2021, Dr. Everson opined that Plaintiff was completely incapacitated from work of any kind from her first evaluation for her disability on September 18, 2008, through her return to work in December 2017. She stated that, while she could not comment on the exact date Plaintiff's disability began because Plaintiff did not establish care with her until October 5, 2005, Plaintiff's disability began before that time. Although Dr. Everson referred to her prior letters from April 2009, November 2011, and June 2014 to support her conclusion, she did not offer any function-by-function assessment of Plaintiff's abilities between October 2001 and March 2007. R. 1799–1800.

The ALJ gave Dr. Everson's opinions as a whole little weight. R. 37. He reasoned that Dr. Everson offered her opinions well after Plaintiff's date last insured and that the evidence in the record demonstrated that Plaintiff's symptoms did not prevent her from performing work within the RFC prior to March 31, 2007. The ALJ stated that Dr. Everson examined Plaintiff twice prior

12

to the date last insured and those examinations revealed only mild abnormalities. He noted, for example, that Dr. Everson observed Plaintiff had normal grip strength and maintained 5/5 strength in the upper extremities bilaterally, findings that are not consistent with her opinions regarding Plaintiff's manipulative abilities. The ALJ observed that, while Dr. Everson did note a hearing impairment, there is no indication that Plaintiff was unable to communicate with the doctor nor does the evidence suggest that she was unable to hear during the relevant period. The ALJ also indicated that he accounted for Plaintiff's hearing impairment by limiting her to jobs that do not require fine hearing capability or telephone communication and do not involve more than occasional interaction with others. He concluded that nothing in Dr. Everson's exam findings or treatment notes prior to the date last insured indicates that Plaintiff would have been incapable of performing work within the RFC. *Id.*

The ALJ further noted that Dr. Everson's June 2014 opinion indicates that Plaintiff's primary impairment was her traumatic brain injury. He explained, however, that Plaintiff suffered her traumatic brain injury in 1992 but continued to perform semi-skilled work until October 2001, not because she was unable to perform the job duties but because the company she worked for downsized and her job was eliminated. The ALJ stated that, while Plaintiff reported being involved in another accident in 2000 or 2001, the record did not document any treatment for additional injuries. He also noted that Plaintiff returned to work in a full-time capacity despite no indication or allegations of significant improvements in cognitive function. *Id.*

The ALJ referenced an opinion from Dr. Everson from September 2015 that is not available in the administrative record. R. 36. He noted that, in September 2015, Dr. Everson opined that Plaintiff was completely incapacitated due to hearing loss. She stated that Plaintiff could frequently lift five pounds, occasionally lift five to ten pounds, occasionally reach with her bilateral upper extremities, and rarely to never handle and finger with her right upper extremity. Dr.

13

Everson found that Plaintiff's pain, fatigue, and other symptoms would cause her to be off-task frequently and would necessitate one unscheduled break per hour. She concluded that Plaintiff was unable to work at all because she is unable to hear and has short-term memory impairments related to her prior traumatic brain injury. *Id.*

With respect to Dr. Everson's opinion that Plaintiff could not work due to hearing loss or memory impairment, the ALJ noted this opinion was not consistent with evidence of treatment prior to the date last insured. R. 37. He explained that the record demonstrates that, despite her hearing loss, Plaintiff was able to communicate well with others. The ALJ stated that Dr. Everson's notes make no mention of any communication difficulties. With regard to Plaintiff's memory issues, the ALJ observed that Dr. Altepeter, a mental health specialist, noted only mild memory deficit during the relevant period, with testing performed shortly after the date last insured confirming the mild memory deficits. The ALJ therefore concluded that, despite being a treating source, Dr. Everson's multiple opinions are not well-supported by evidence relating to the period prior to Plaintiff's date last insured. *Id.*

The ALJ noted that Dr. Everson stated in her 2021 opinion that Plaintiff was disabled until December 2017, when Plaintiff returned to work. *Id.* He concluded, however, that Dr. Everson offered no explanation for the end of Plaintiff's disability. Even though Dr. Everson referred to her earlier statements, the ALJ found these statements were not supported by the evidence regarding Plaintiff's functioning prior to March 31, 2007. R. 38.

Plaintiff argues that Dr. Phillips and Dr. Everson's opinions are well supported and that extensive treatment notes and medical evidence support their opinions. She asserts that, while the ALJ noted that Dr. Phillips and Dr. Everson's opinions were issued after Plaintiff's date last insured, there was "nothing improper" about the doctors "relying on the totality of the clinical and objective evidence from both before and after the date last insured to give opinions" regarding

14

Plaintiff's functioning.  Dkt. No. 13 at 35.  But medical evidence postdating the date last insured is relevant only to the degree that it sheds light on a claimant's "impairments and disabilities from the relevant insured period."  *Million v. Astrue*, 260 F. App'x 918, 921–22 (7th Cir. 2008).  The ALJ explained why Dr. Phillips and Dr. Everson's opinions were inconsistent with the record evidence.

Plaintiff also argues that the ALJ erred to the extent he rejected the opinions because he believed there was no evidence Plaintiff's conditions deteriorated around October 2001 or improved in 2017.  The ALJ noted that Plaintiff suffered her traumatic brain injury in 1992 but continued to perform semi-skilled work until October 2001, when she was laid off, and that Plaintiff subsequently returned to work in 2017 in a full-time capacity despite no indication or allegations of significant improvements in cognitive function.  R. 37.  Plaintiff further asserts that the ALJ erred by not finding that she was provided with work accommodations, but as noted above, the ALJ explained why the record did not support that Plaintiff's work was accommodated.  *See* R. 33.  While "the fact that someone works is not a sufficient ground for concluding that she's not disabled," *Goins v. Colvin*, 764 F.3d 677, 679 (7th Cir. 2014), it was not unreasonable for the ALJ to note Plaintiff's work history and the evidence that her condition was stable to find that the record did not support the extreme limitations Dr. Phillips and Dr. Everson found.

Plaintiff's arguments amount to a disagreement with the ALJ's assessment of evidence. On judicial review, courts "do not review medical opinions independently but rather review the ALJ's weighing of those opinions for substantial evidence, and [courts] only overturn that weighing if no reasonable mind could accept the ALJ's conclusion."  *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022).  In this case, the ALJ applied the appropriate regulations and articulated sound reasons for finding the opinions were not supported by the record.

Plaintiff asserts that, rather than giving controlling weight to her treating sources, the ALJ gave "great" and "significant" weight to the opinions of Dr. Genest and "partial" weight to the non-examining state agency medical consultants' opinions. Citing *Vanprooyen v. Berryhill*, 864 F.3d 567, 573 (7th Cir. 2017), and *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003), Plaintiff argues that the opinion of a non-examining physician alone is not sufficient to support an ALJ's rejection of the opinion of a treating physician. Dkt. No. 13 at 39. But the ALJ did not reject the opinions of Plaintiff's treating physicians based on the opinions of non-treating physicians. The ALJ thoroughly explained the reasons he afforded little weight to the opinions of Dr. Phillips and Dr. Everson. Substantial evidence supports the ALJ's conclusions. *See Grotts*, 27 F.4th at 1278. Therefore, remand is not appropriate on this basis.

### 2. Dr. Wlodarek

Dr. Wlodarek completed a narrative report and neurocognitive disorder questionnaire on March 5, 2016. R. 1351–58. He reviewed Plaintiff's medical records regarding her claims for disability but did not interview Plaintiff in person. R. 1351. Dr. Wlodarek determined that Plaintiff has diagnoses of seizure disorder, traumatic brain injury, depression, headaches, and fibromyalgia. Dr. Wlodarek found that Plaintiff experienced a significant degree of decline with regard to complex attention, executive function, learning and memory, and social cognition. He opined that Plaintiff had marked restriction in maintaining social functioning; had marked difficulties in maintaining concentration, persistence, or pace; and would have repeated episodes of decompensation, each of extended duration. R. 1354.

The ALJ gave Dr. Wlodarek's opinion little weight. R. 43. He explained that, although Dr. Wlodarek's statement indicated that he reviewed Plaintiff's medical records, it did not elaborate as to precisely which records he reviewed. In addition, the ALJ stated that Dr. Wlodarek found that Plaintiff had been disabled since her alleged onset of disability in October 2001, but he

16

did not specify which records supported disability as of that date. The ALJ noted that Plaintiff submitted records that extended many years after her date last insured and that Dr. Wlodarek offered his opinion nearly nine years after Plaintiff's date last insured, so knowing which records informed Dr. Wlodarek's opinion was critical to assessing its applicability to the period prior to March 31, 2007. The ALJ further found that Dr. Wlodarek's extreme limitations were directly contradicted by the results of July 2007 neuropsychological testing, which was performed close to Plaintiff's date last insured. He stated that Dr. Wlodarek's opinions are also contradicted by the opinion of Dr. Altepeter, who actually treated Plaintiff during the period shortly before and shortly after her date last insured. *Id.*

Plaintiff argues that the ALJ erred in giving little weight to Dr. Wlodarek's opinion because he did not indicate which records he relied upon in reaching his opinions. As the regulations state, "[t]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion." 20 C.F.R. § 404.1527(c)(3). In this case, Dr. Wlodarek did not cite to any treatment notes or clinical findings to support his extreme limitations and conclusions.

Plaintiff nevertheless contends that the ALJ "easily could have clarified the matter by fulfilling his affirmative duty to develop the record by asking the examining neurologist to specify what records were reviewed or at least advising counsel of his concerns so that Ms. Freismuth could ask the doctor to supplement the record." Dkt. No. 13 at 37. "Although an ALJ does have a duty to develop the record, that duty is limited when an attorney represents the claimant during the benefits hearing." *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023). When a claimant is represented, courts "presume the attorney made [the claimant's] best case before the ALJ." *Id.* at 1246. In this case, not only was Plaintiff represented, but at the hearing, her attorney "confirmed

17

that the evidence was complete." *Id.* at 1244; *see* R. 64. The ALJ was therefore entitled to conclude that further development of the issues was not necessary.

Plaintiff also asserts that the ALJ erred in discounting Dr. Wlodarek's opinions on the basis that they are inconsistent with Dr. Altepeter's findings. She argues that Dr. Wlodarek's opinions are supported by the record. But, again, Plaintiff merely disagrees with how the ALJ weighed the evidence. It is not the court's role to "reweigh the evidence, even where reasonable minds might disagree about the outcome." *Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023) (citation omitted). The ALJ's decision to assign little weight to Dr. Wlodarek's opinions was reasonable and supported by substantial evidence.

## CONCLUSION

After three administrative hearings and four remands, the court concludes that the Commissioner's decision that Plaintiff was not disabled between October 19, 2001, and March 31, 2007, is supported by substantial evidence and that the ALJ did not err in reaching this conclusion. For these reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED** at Green Bay, Wisconsin this 28th day of July, 2026.

_____
William C. Griesbach
United States District Judge

18